**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

VERONICA LYNN SAPPAH,

        Plaintiff,

v.                                                                                                                   No. 15-CV-1090

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

---

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                                       **OF COUNSEL:**

Osterhout Disability Law                    KARL E. OSTERHOUT, ESQ.
Attorneys for Plaintiff
521 Cedar Avenue, Suite 200
Oakmont, Pennsylvania 15139

Olinsky Law Group                                PAUL B. EAGLIN, ESQ.
Attorneys for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

Social Security Administration,              MARIA P. FRAGASSI SANTANGELO, ESQ.
Office of General Counsel                   Special Assistant U.S. Attorney
Attorneys for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

## MEMORANDUM-DECISION AND ORDER

Plaintiff Veronica Lynn Sappah ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act ("Act").

Plaintiff moves for a finding of disability, or in the alternative, for the matter to be remanded for further proceedings, and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 1, 10.

## I. Background

On November 13, 2012, plaintiff filed an application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. § 401 et seq., claiming an alleged onset date of February 1, 2012. T.[1] 141-44. The application was denied on January 29, 2013. Id. at 67-76. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Gregory M. Hamel on January 14, 2014. Id. at 29-66 (transcript of hearing). In a decision dated March 28, 2014, the ALJ held that plaintiff was not entitled to disability benefits. Id. at 9-28. Plaintiff filed a timely request for review with the Appeals Council, and on July 8, 2015, the request was denied, thus making the ALJ's findings the final decision of the Commissioner. Id. at 1-7. This action followed.

## II. Discussion

### A. Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'more than a mere scintilla,'" meaning that in the record one can find "'such relevant

---

[1] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 12.

-2-

evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); see Halloran, 362 F.3d at 31.

### B. Determination of Disability

"Every individual who is under a disability. . . shall be entitled to a disability. . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). Additionally, the severity of the impairment is "based [upon] objective medical

-3-

facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04 Civ. 9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)) (additional citation omitted).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity ("RFC") to perform his [or her] past work. Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### C. ALJ Hamel's Findings

Plaintiff, represented by counsel, testified at the hearing held on January 14, 2014. T. 29-66. Using the five-step sequential evaluation, ALJ Hamel found that plaintiff (1) had not engaged in substantial gainful activity since February 1, 2012, the alleged onset date; (2) had the following severe medically-determinable impairments: degenerative disc disease of the lumbosacral and thoracic spine (lumbar spondylosis), pes planus[2] with right inversion ankle and tibial insufficiency, obesity, degenerative joint disease and impingement syndrome affecting the right shoulder, and degenerative changes of the right hip; (3) did not have an impairment, alone or in combination, sufficient to meet the listed impairments in Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) but cannot climb ladders or similar devices or work in hazardous environments such as at heights or around dangerous machinery. The claimant is further limited to no more than occasional climbing stairs, balancing, stooping, kneeling, crouching, or crawling"; and, thus (5) was capable of performing her past relevant work as a hotel desk clerk and convenience store clerk. Id. at 14-24.

### D. Plaintiff's Contentions

Plaintiff contends that the ALJ (1) erred in failing to properly apply the treating physician rule to the opinions of plaintiff's treating physicians: Dr. Michael McNulty, M.D. and Dr. Elizabeth Hutton Lykling, M.D.; and (2) erred in failing to find plaintiff's mental

---

[2] Pes planus is a condition in which the longitudinal arch of the foot is broken down, the entire sole touching the ground. The condition is also known as "flatfoot." STEDMAN'S MEDICAL DICTIONARY 1468 (28th ed. 2006).

impairments severe at step two of the sequential evaluation. See Dkt. No. 13.

### E. RFC

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in step five of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

#### a. Treating Physician Rule

Plaintiff argues that the ALJ erred in failing to provide good, specific, and supported reasons for affording less than controlling weight to the opinions of Dr. McNulty and Dr. Lykling. Dkt. No. 13 at 4-15.

When evaluating a claim seeking disability benefits, factors to be considered include

objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir. 1991). Generally, more weight is given to a treating source. Under the regulations, a treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw, 221 F.3d at 134. "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D. Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be given. Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999). Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner. Id. at 133-34; see 20 C.F.R. § 404.1527(e).

Dr. Lykling completed a depression and anxiety questionnaire, as well as a physical RFC assessment. T. 383-90. Dr. McNulty completed a physical RFC assessment. T. 356-59.

### i. Assessment of Plaintiff's Physical Impairments

On December 16, 2013, Dr. Lykling opined that plaintiff could frequently carry ten pounds, but no more than that amount, due to her right hip and back pain. T. 387. She could stand for a maximum of two hours during an eight-hour workday, and sit for less than two hours during an eight-hour workday. Id. She would need breaks during the time that she sits. Id. Dr. Lykling opined that plaintiff could only sit or stand for ten minutes before needing to change positions. Id. at 388. She must walk around every ten minutes, for 10 minutes at a time. Id. Plaintiff would further need to be able to shift from sitting to standing or walking at will. Id. Dr. Lykling further opined that plaintiff would need to lie down at unpredictable intervals during an eight-hour workday, and that this would occur every fifteen or twenty minutes. Id. Dr. Lykling attributed these limitations to plaintiff's hip pain and sleep apnea. Id. Plaintiff could occasionally twist or climb stairs, but she could never stoop, bend, crouch, or climb ladders. Id. She could perform reaching, handling, fingering, and feeling, but she could not perform pushing or pulling, due to her right hip pain. Id. at 389. Dr. Lykling opined that plaintiff should avoid even moderate exposure to extreme heat and cold, and high humidity. Id. Plaintiff should further avoid concentrated exposure to fumes, odors, dusts, gases, soldering fluxes, solvents and cleaners, and chemicals. Id.

Dr. Lykling noted that plaintiff's most severe limitations were due to her "severe uncompensated sleep apnea/hypoxia with hypersomnia."[3] T. 389. She further attributed the limitations to plaintiff's hip pain. Id. On average, Dr. Lykling estimated that plaintiff would be absent from work more than four days per month due to her impairments and

---

[3] Hypersomnia is "[a] condition in which sleep periods are excessively long, but the person responds normally in the intervals[.]" STEDMAN'S MEDICAL DICTIONARY 926.

treatment for her impairments. Id. at 390.

Dr. McNulty submitted a medical opinion on December 4, 2013. T. 356-59. Dr. McNulty indicated that plaintiff could lift and carry no more than twenty pounds on an occasional basis, and no more than ten pounds on a frequent basis. Id. at 356. Her maximum ability to stand and walk (with normal breaks) was limited to less than two hours, and her maximum ability to sit (with normal breaks) was limited to about two hours. Id. Plaintiff could sit for thirty minutes before needing to change positions. Id. at 357. She could stand for thirty minutes before needing to change positions. Id. Plaintiff would need to walk around every thirty minutes, for thirty minutes. Id. She would also need to be able to shift at will from sitting to standing or walking. Id. Dr. McNulty noted that it was "unknown" whether plaintiff would need to sometimes lie down at unpredictable intervals during the workday. Id. Plaintiff could occasionally twist and stoop or bend, but she could never crouch, climb stairs, or climb ladders, due to pain with movement. Id. Dr. McNulty opined that plaintiff had no limitations in reaching, handling, fingering, feeling, pushing, or pulling. Id. at 358. He also opined that plaintiff did not have any environmental restrictions. Id. Lastly, Dr. McNulty anticipated that plaintiff's impairments or treatment from her impairments would cause her to be absent from work about four days per month. Id. at 359.

The ALJ assigned "little weight" to Dr. Lykling's opinion because it was not well supported by the evidence as a whole. T. 21. The ALJ afforded "greater weight" to Dr. McNulty's opinion. Id. To the extent that the ALJ discounted Dr. Lykling and Dr. McNulty's opinions, the ALJ noted that the opinions were inconsistent with the doctors' own treatment notes and, in the case of Dr. Lykling's opinion, inconsistent with the treatment notes of Dr.

Glady Jacob, M.D., who treated plaintiff for her sleep-related issues. Id.

In citing to Dr. Jacob's treatment notes as support for assigning little weight to Dr. Lykling's opinion, the ALJ notes that on December 9, 2013, plaintiff exhibited normal coordination, gait, and bilateral deep tendon reflexes. T. 21, 375. Dr. Jacob's notes also indicated that plaintiff's sensation was grossly intact, and that she had full bilateral upper extremity motor strength and normal muscle tone and bulk bilaterally. Id. at 375. Dr. Jacob's treatment note also indicates that plaintiff's sleep-related issues are likely due to hypersomnia, and that plaintiff was advised not to drive. Id.

Dr. Lykling began treating plaintiff in November 2012. T. 251. At that time, Dr. Lykling noted that plaintiff was suffering from depression and anxiety, and had experienced weight gain while taking Paxil. Id. at 251. She also reported low back pain, and shoulder pain for which she was having surgery the following week. Id. Plaintiff walked with a slightly antalgic gait. Id. at 252. Prior treatment notes from Boonville Family Care, the practice where Dr. Lykling saw plaintiff, indicated plaintiff's longstanding issues with chronic back pain. See T. 259, 262, 264, 266. The treatment notes also indicate that plaintiff complained that her legs would periodically give out. Id. at 262, 264. MRI results of plaintiff's back from April 12, 2012 indicated a small left lateral disc herniation at L5-S1 mildly narrowing the left L5-S1 neural foramen, and mild disc bulging at L3-4, L4-5, and L5-S1. Id. at 169-70. MRI results of plaintiff's hips from February 9, 2013 showed significant degenerative changes in the right hip, cartilage thinning in the anterior/superior hip joint, and a subchondral cyst in the anterior acetabulum. Id. at 309. Later MRI results of plaintiff's hips from August 27, 2013 indicated that her condition had not changed as to her right hip, and milder degenerative changes were seen as to her left hip. Id. at 311. Dr. Lykling's own

treatment notes indicate plaintiff's longstanding issues with pain due to her physical impairments. Id. at 252, 303. On January 10, 2013, Dr. Lykling described plaintiff's pain as "uncontrolled" by pain medication. Id. at 303.

The Court notes that Dr. Lykling's opinion is further supported by Dr. McNulty's treatment notes and opinion. As plaintiff correctly notes, Dr. McNulty examined plaintiff more than once per month during the relevant time period. Dkt. No. 13 at 4 (citing T. 173-85, 331-51, 438-39). When Dr. McNulty examined plaintiff on October 18, 2012, plaintiff reported her pain as a seven out of ten. T. 183. Dr. McNulty observed moderate tenderness of plaintiff's lumbar spine and paraspinals. Id. at 184. Plaintiff's extension was only ten degrees, with pain. Id. Her right and left hip abductions were 0/5. Id. Dr. McNulty assessed plaintiff's x-rays, MRI, and EMG/NCV results as showing multilevel degenerative changes of the thoracic spine, small lateral disc herniation at L5-S1 mildly narrowing the foramen in the lumbar spine, and possible lumbosacral radiculopathy. Id. Indeed, a previous nerve conduction study revealed a pinched nerve in her lower back. Id. at 210. Because previous conservative treatments had failed, Dr. McNulty recommended epidural injections. Id. at 185. However, plaintiff reported no pain relief from the epidural injections during her follow-up appointment on November 13, 2012. Id. at 174-75. Further epidural injections yielded no relief. Id. at 349. In March 2013, Dr. McNulty observed that plaintiff experienced moderate tenderness of the SI joint, lumbar spine. Id. at 345. She was able to flex with fingers six inches from the floor with mild pain. Id. Dr. McNulty noted that plaintiff continued to experience lumbar pain with right lower extremity pain to her knee and ankle at

times. Id. at 346. Dr. McNulty further noted that elements of sacroiliitis[4] were present. Id. He noted that plaintiff would continue her use of Fentanyl patches. Id. Plaintiff received an injection in her right sacroiliac joint on March 27, 2013. Id. at 342. This injection did not help her pain symptoms, and on May 10, 2013, Dr. McNulty noted that plaintiff should possibly see a different surgical provider for an opinion, as well as a podiatrist for orthotics. Id. at 341. Dr. McNulty continued to observe tenderness in plaintiff's lumbar and thoracic spines, 0/5 hip abduction on both sides, and decreased range of extension. Id. at 340. These objective observations were largely the same in August and October 2013, and January 2014. See id. 332, 336, 439.

Despite the medical records described above, including significant MRI, x-ray, and EMG results, along with objective observations of plaintiff's limitations, the ALJ did not afford controlling weight to Dr. Lykling or Dr. McNulty's opinions. See T. 21. The ALJ further failed to discuss the required factors in deciding to assign less than controlling weight to either opinion. Burgess v. Astrue, 537 F.3d 117, 129-30 (2d Cir. 2008) (finding error where the ALJ did not consider the required factors in determining how much weight a treating physician's opinion receives). The ALJ's determination that plaintiff can perform light work, which requires "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls," 20 C.F.R. § 404.1567(b), is unsupported by Dr. Lykling and Dr. McNulty's opinions. Dr. McNulty opined that plaintiff's maximum ability to stand and walk during an eight-hour workday was limited to less than two hours. T. 356. Dr. Lykling limited plaintiff's maximum ability to stand and walk to about

---

[4] Sacroiliitis is inflammation of the sacroiliac joint. STEDMAN'S MEDICAL DICTIONARY 1714.

two hours. Id. at 387. Dr. McNulty opined that plaintiff would be able to sit for a maximum amount of time of about two hours. Id. at 356. Dr. Lykling limited plaintiff's maximum ability to sit to less than two hours. Id. at 387. Further, Dr. Lykling opined that plaintiff could lift and carry no more than ten pounds frequently. Id. at 387. Dr. McNulty opined that plaintiff could lift twenty pounds occasionally and ten pounds frequently. Id. at 356. Further, Dr. McNulty indicated that plaintiff would be absent from work four days per month due to her physical impairments and her treatment for her physical impairments. Id. at 359. Dr. Lykling estimated plaintiff would be absent more than four days per month. Id. at 390. These estimations of plaintiff's absences from work indicate that "she would not be able to participate in full time, competitive employment[.]" Marrese v. Colvin, No. 15-CV-6369, 2016 WL 5081481, at *2 (W.D.N.Y. Sept. 16, 2016). Despite these well-supported opinions, the ALJ concluded that plaintiff could perform light work.

Lastly, the only other opinion on record as to plaintiff's physical impairments is from a consultative examiner, Dr. Tanya Perkins-Mwantuali, M.D., to whom the ALJ affords "little weight." T. 19; 224-30. The consultative examiner noted that plaintiff's gait is abnormal, and that she throws her right hip forward before placing the right foot on the floor. T. 226. She is able to walk on heels and toes, but she is unstable. Id. She observed that plaintiff could fully squat, and that she had no trouble changing for the exam, or getting on or off the exam table. Id. at 226-27. Dr. Perkins-Mwantuali observed tenderness in plaintiff's back, and limited range of motion. Id. at 227-28. She noted that plaintiff's prognosis was "guarded" and offered the following medical source statement: "The claimant has a moderate limitation for any activity requiring the use of the right arm above the level of the shoulder. The claimant should avoid respiratory triggers. She has a mild to moderate

-13-

limitation with walking, bending, climbing, and twisting." Id. at 229. The ALJ described Dr. Perkins-Mwantuali's opinion as "vague and imprecise," and noted that she had failed to give specific work-related limitations. Id. at 19.

Based on the foregoing, the Court finds that the ALJ improperly applied the treating physician rule by substituting his own opinion for that of plaintiff's treating physician. As stated above, Dr. Lykling and Dr. McNulty's opinion are supported by the record, and the ALJ's decision to substitute his own expertise for that of the treating physicians' is a reversible error requiring remand. See Richardson v. Barnhart, 443 F. Supp. 2d 411, 422 (W.D.N.Y. 2006)(finding error where the ALJ substituted his own judgment for that of the treating physician's); Ruiz v. Apfel, 98 F. Supp. 2d 200, 208 (D. Conn. 1999)(finding that the ALJ was not qualified to know which symptoms were necessary to support the treating physician's opinion). The ALJ assigned "limited" or "little" weight to all of the medical opinions of record, and in so doing, he failed to set forth good reasons in rejecting the treating physicians' opinions, as required by the treating physician rule. Rolon v. Comm'r of Soc. Sec., 994 F. Supp. 2d 496, 509 (S.D.N.Y. 2014)(remanding where the ALJ did not cite to any medical opinion to dispute the treating physicians' conclusions)(citing Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)).

Accordingly, this matter is remanded, and the ALJ is directed to properly apply the treating physician rule in considering Dr. Lykling's and Dr. McNulty's opinions as to the nature and severity of plaintiff's physical impairments.

### ii. Assessment of Plaintiff's Mental Impairments

Plaintiff contends that the ALJ erred in finding plaintiff's mental impairments non-

severe, and further erred in formulating plaintiff's RFC that did not reflect the practical implications of plaintiff's mental impairments. Dkt. No. 13 at 15-20.

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). In determining the severity of a mental impairment, the ALJ must apply the "special technique" set out in 20 C.F.R. § 404.1520a. Where the ALJ recognizes that a claimant has a "medically-determinable mental impairment,"

> the ALJ must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The first three areas (i.e., activities of daily living; social functioning; and concentration, persistence, or pace) are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4).

Piazza v. Colvin, No. 13-CV-2230 JS, 2014 WL 4954598, at *8 (E.D.N.Y. Sept. 30, 2014). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y. 1995); Bergeron v. Astrue, No. 09-CV-1219, 2011 WL 6255372, at *3 (N.D.N.Y. Dec. 14, 2011). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987)).

> As pertinent here, basic work activities are "the abilities and aptitudes necessary to do most jobs," including: "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling," as well as "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting."

Chavis v. Colvin, No. 5:12-cv-1634, 2014 WL 582253, at *2 (N.D.N.Y. Feb. 13, 2014) (quoting 20 C.F.R. § 404.1521(b)(1), (3)-(6)).

In determining the severity of plaintiff's impairments, the ALJ was required to apply the treating physician rule to the opinions of record in determining the severity of plaintiff's mental impairments. Monge v. Astrue, No. 11-CV-5019 (DAB)(DF), 2014 WL 5025961, at *20 (S.D.N.Y. Sept. 29, 2014) (citing 20 C.F.R. § 404.1527(c)) (additional citations omitted). The only opinion of record as to plaintiff's mental impairments was a depression and anxiety questionnaire completed by Dr. Lykling on December 16, 2013. T. 383-86. Dr. Lykling opined that plaintiff exhibited depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with a change in weight; sleep disturbance; psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; and hallucinations, delusions or paranoid thinking. Id. at 383. Dr. Lykling also noted that plaintiff exhibited generalized persistent anxiety accompanied by motor tension, autonomic hyperactivity, and apprehension expectation. Id. at 384. She further noted that plaintiff exhibits a fear of enclosed spaces and large numbers of people, experiences recurrent panic attacks, and experiences recurrent and intrusive recollections of when she was held hostage in a convenience store, which is a source of marked distress. Id. Based on plaintiff's symptoms, Dr. Lykling

-16-

concluded that plaintiff has moderate limitation in restriction of activities of daily living, and extreme limitations in maintaining social functioning, and maintaining concentration, persistence, and pace. Id. at 385. There was insufficient evidence to determine whether plaintiff experiences episodes of decompensation. Id. Dr. Lykling noted that plaintiff also suffered from sleep apnea, and that she was being evaluated for neurologic and cognitive findings related to that ailment. Id.

In affording little weight to Dr. Lykling's opinion, the ALJ concluded that plaintiff had received only "conservative treatment" for her mental impairments, and had not engaged in psychological intervention until right before the hearing, indicating that her symptoms were not as severe as she alleged. T. 17. The Court finds that the ALJ committed legal error in failing to credit Dr. Lykling's opinion, and plaintiff's own statements and testimony, based on the fact that she did not seek treatment until just prior to the hearing. It is well-established in the Second Circuit that an ALJ may not discount a claimant's failure to seek treatment without first exploring the reasons why the claimant did not seek treatment, especially where the lack of treatment pertains to a plaintiff's mental impairments. See Shaw v. Chater, 221 F.3d 126, 133 (2d Cir. 2000); Melia v. Colvin, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *22 (N.D.N.Y. July 1, 2015) (noting that an ALJ may not discount a plaintiff's symptoms "based upon [p]laintiff's failure to seek mental health treatment, without considering the [p]laintiff's explanation for her failure to seek treatment and the impact poor judgment resulting from her mental health impairments . . . may have had on the failure"). The ALJ's failure to seek an explanation from plaintiff is particularly pertinent here, where plaintiff indicated to Dr. Lykling in a January 25, 2013 treatment note that she sought out the services of a counselor, but did not feel comfortable with that counselor after meeting with

her.  T. 302.  Thus, the ALJ's decision to afford little weight to Dr. Lykling's opinion and plaintiff's statements constituted error requiring remand.

Further, Dr. Lykling's opinion, coupled with plaintiff's testimony and the medical evidence of record, indicates that plaintiff's mental impairments caused more than a minimal effect on plaintiff's ability to work.  Plaintiff testified that she does not engage in social activities or visit friends or relatives because of her anxiety.  T. 39-40.  As of the date of the hearing, plaintiff was seeing a psychiatrist because "the anxiety [was] driving [her] crazy."  Id. at 43.  She testified that her anxiety causes slurred speech, and that she stays in bed for extended periods of time.  Id. at 47.  She has difficulty concentrating on the television, or reading a book.  Id. at 48.  Her medical records indicate that she frequently complained of depression and anxiety symptoms to Dr. Lykling, and indicated that she had difficulty in finding a medication regimen that worked for her.  Id. at 251-52, 267-70, 273-76, 290-91, 302-03.

Accordingly, the Court finds that the ALJ's severity determination was not supported by substantial evidence, and this matter is remanded on this ground.  The ALJ is directed to assess the severity of plaintiff's mental impairments in compliance with the treating physician rule.

### F.  Remaining Contentions

To the extent that plaintiff objects to the ALJ's decision based the ALJ's error in assessing plaintiff's credibility, and the ALJ's questioning of the vocational expert, the undersigned declines to consider these contentions at this juncture, as the remaining contentions may be impacted by the subsequent proceedings directed by this Order.

### III. Conclusion

Having reviewed the administrative transcript and the ALJ's findings, the Court concludes that the ALJ's determination is not supported by substantial evidence. Remand for further administrative action consistent with this Memorandum-Decision and Order is needed. Accordingly, it is hereby

**ORDERED** that plaintiff Veronica Lynn Sappah's motion for judgment on the pleadings is **GRANTED** (Dkt. No. 13). The matter is remanded to the Commissioner for additional proceedings consistent with the above, pursuant to sentence four of 42 U.S.C. 405(g); and it is further

**ORDERED** that the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court serve copies of the Memorandum Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated:    March 30, 2017
          Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge